UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRETT CHRISTOPHER WAGNER,

    Plaintiff,

v.

NANCY A. BERRYHILL,[1]

    Defendant.

CASE NO. C16-5974-RJB-BAT

**REPORT AND RECOMMENDATION**

Brett Christopher Wagner seeks review of the denial of his Supplemental Security Income, Period of Disability, and Disability Insurance Benefits applications. He contends the ALJ erred by failing to apply applicable special rules at Step 1, issuing an adverse credibility determination, misevaluating medical opinion evidence of two providers, and misevaluating other source and lay witness testimony. Dkt. 19. As discussed below, the Court recommends the case be **AFFIRMED** and **DISMISSED** with prejudice.

**BACKGROUND**

Mr. Wagner is currently 64 years old, has at least a high school education, and has worked as a commercial artist/illustrator. Tr. 49, 41, 110. On May 28, 2013, he applied for

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 21, 2017 and is therefore substituted for Carolyn W. Colvin as the defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

REPORT AND - 1

1 benefits, alleging disability as of January 1, 2012. Tr. 32. His applications were denied initially

2 and on reconsideration. *Id*. The ALJ conducted a hearing on November 20, 2015, finding Mr.

3 Wagner not disabled. Tr. 42.

4 Utilizing the five-step disability evaluation process,[2] the ALJ found Mr. Wagner met the

5 insured status requirements through September 30, 2017; however, he had engaged in substantial

6 gainful activity January 2013 through December 2013. Tr. 34. Even so, the ALJ found Mr.

7 Wagner had other continuous periods during which he was not working; she therefore proceeded

8 with the remainder of the evaluation process. Tr. 34-35. The ALJ found Mr. Wagner had severe

9 impairments of bilateral hip arthritis, peripheral neuropathy, bilateral carpal tunnel syndrome,

10 and degenerative disc disease. Tr. 35. The ALJ further found Mr. Wagner had the RFC to

11 perform light work with the following limitations: he could occasionally climb ramps, stairs,

12 ladders, ropes and scaffolds; he could occasionally stoop, kneel, crouch and crawl; he could

13 frequently balance; he was limited to frequent bilateral handling, fingering, and feeling; and he

14 could endure occasional exposures to extreme cold, heat, and to pulmonary irritants. Tr. 38. The

15 ALJ next found Mr. Wagner was capable of performing past relevant work, and he was therefore

16 not disabled. Tr. 41-42. As the Appeals Council denied Mr. Wagner's request for review, the

17 ALJ's decision is the Commissioner's final decision. Tr. 1-7.

## DISCUSSION

**A.     Step 1**

20 Mr. Wagner contends the ALJ erred by finding he engaged in substantial gainful activity

21 (SGA) for the year 2013. Dkt. 19 at 2-5. Specifically, he argues the ALJ erred in failing to

22 apply the "special rules" applicable to determining whether self-employment qualifies as SGA,

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

including whether any reported income was affected by any profit sharing agreement, whether he contributed over half the time required for management of the business he ran with his wife, or whether he received a "substantial income" from the business. *Id.* (citing 20 C.F.R. §§ 404.1575(a)(2), (b)(1), (c)). The Commissioner does not dispute Mr. Wagner's allegations, but contends any error was harmless because the ALJ nevertheless proceeded with the remainder of the five-step sequential evaluation and still found Mr. Wagner not disabled. Dkt. 20 at 2.

There is no allegation the ALJ erroneously altered the alleged onset date or that she failed to consider evidence during the period in which she found Mr. Wagner was engaged in SGA. Indeed, Mr. Wagner offers no analysis regarding the impact of the ALJ's step one finding. Rather, his remaining arguments concerning any work he may have carried out during the period under review amount to an allegation the ALJ erred because there is "no" evidence he "continued sustained use of his hand and fingers" for work in 2013. *See, e.g.,* Dkt. 19 at 9. As the Court discusses below, the evidence the ALJ relied upon showing Mr. Wagner used or could use his hands and fingers was sufficient even without rising to the level of SGA. The Court therefore finds that, because the ALJ applied the remainder of the disability process and found Mr. Wagner was not disabled at step four, any error was harmless.

**B.      Adverse Credibility Determination**

Where there is no clear evidence or allegation of malingering, an ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). In weighing a claimant's credibility, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An "ALJ may consider [a

claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 1.  *Conflicting Medical Evidence*

The ALJ first found that Mr. Wagner was not as limited as he alleged because, although his allegations were supported by imaging and testing, they were not supported by clinical observations. Tr. 39. The ALJ noted Mr. Wagner asserted he had arthritis, fevers, numbness in his fingers and feet, Reiter's syndrome, coccidiomycosis, degenerative disc disease, depression, and attention deficit disorder. Tr. 38. Mr. Wagner further alleged he suffered from an inability to hold his pen for more than three minutes or to complete fine motor movements, peripheral neuropathy, falling, pain in his hips and back from sciatica and nerve compression, and an inability to sit for more than 40 minutes at a time or to stand for more than 5 minutes at a time; he requires a cane for ambulation; and he has difficulties with fatigue and focus. Tr. 38. The ALJ acknowledged that imaging and testing of Mr. Wagner's lumbar spine, extremities, and hips documented the severity of his degenerative disc disease, peripheral neuropathy, carpal tunnel syndrome, and bilateral osteoarthritis of the hips, and that his examinations revealed he had diminished sensation in his extremities. Tr. 39. Nevertheless, the ALJ found that clinical examinations revealed he had a normal stance and normal gait, did not require the use of an assistive device, he had full strength and tone, full grip strength, intact deep tendon reflexes, negative Tinel's signs, he could tie his shoes and button his shirt, pick up a penny, and get on and off the examination table. *Id.* The ALJ also found Mr. Wagner experienced improvement in his back pain with medication. *Id.*

The evidence cited by the ALJ fails to address some of the limitations Mr. Wagner alleged. At a minimum, the ALJ failed to cite evidence contradicting Mr. Wagner's specific allegations concerning difficulties with fine motor movements beyond three minutes, with sitting for more than 40 minutes, and with fatigue and focus. Thus, to the extent the ALJ rejected Mr. Wagner's testimony regarding these impairments based on conflicting evidence in the record, she erred.

**2.** *Medical Improvement*

The ALJ also found Mr. Wagner experienced "improvement with the medication for his back pain." Tr. 39 (citing Tr. 514). In May, 2015, Dr. Theresa Karplus noted Mr. Wagner reported he had no relief for back pain and sciatica with two out of three epidural injections and Norco, but he experienced "better control" with Tramadol, which he took "sparingly." Tr. 514. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for ... benefits." *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Mr. Wagner argues the ALJ erred because any reported improvement was not inconsistent with his alleged limitations. Dkt. 21 at 8 ("[B]etter control is not synonymous with 'sufficient control that he does not frequently need a cane, and can walk more than half a block at a time.'"). But the argument fails to address his admission he used the effective medication only sparingly. The Court therefore finds the ALJ properly considered this treatment in evaluating the severity of Mr. Wagner's symptoms.

**3.** *Daily Activities*

An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when the activities contradict the claimant's subjective complaints or when they are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Similarly, an ALJ may

RECOMMENDATION - 5

consider inconsistencies in a claimant's testimony, or between his testimony and his conduct. *Light*, 119 F.3d at 792. The ALJ found Mr. Wagner offered contradictory statements about when he last worked. Tr. 39. At his hearing, Mr. Wagner testified he last worked in July 2012. Tr. 75, 78. In October 2013, however, Mr. Wagner reported to a provider that he last worked "two weeks ago" and that he was a digital artist. Tr. 547, 550. The ALJ also noted that, although some evidence suggested Mr. Wagner's wife performed "the bulk" of their projects, "that would nevertheless suggest [Mr. Wagner] was performing some of them." Tr. 40. On this basis, the ALJ was justified in concluding Mr. Wagner's reported activities were "not as limited as one would expect given his complaints," and that his later testimony was undermined by earlier testimony. Tr. 39; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant's activities may have a bearing on his credibility where the activities are inconsistent with claimed limitations).

The ALJ also noted that Mr. Wagner reported he spent time gardening, researching on his iPad, he could complete household chores, was independent in self-care, could prepare simple meals, drive, and go shopping at Home Depot for items such as sand paper. Tr. 39 (citing Tr. 94, 551). Mr. Wagner suggests the characterization ignores that his condition deteriorated over time, noting he testified that he could only drive for 22 minutes after taking pain medication, and he has trouble holding a toothbrush, buttoning buttons, and tying shoelaces. Dkt. 19 at 15-16 (citing Tr. 74, 267). Mr. Wagner also clarifies he testified that he is able to use his iPad because he can use it open-handed, without pointing, which is necessary because his finger goes numb. Dkt. 19 at 16 (citing Tr. 74). Mr. Wagner suggests the ALJ erred by failing to explain why this evidence was rejected. *Id.* at 16. But Mr. Wagner also testified that, on a typical day, he uses his iPad to check his email, read the news, and conduct research regarding his conditions. Tr. 93-94. He

further testified he "might try to sand something" but that he doesn't do that very often (although he made his cane over a period of six months). Though some of Mr. Wagner's later testimony is consistent with a worsening condition, some of it is not. The ALJ is charged with resolving conflicts and ambiguities, *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and is entitled to draw inferences "logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). This is what the ALJ did here. Accordingly, the Court finds no error.[3]

In summary, the ALJ provided several reasons for discounting Mr. Wagner's testimony that were specific, clear and convincing. The ALJ's valid reasons are not negated by the inclusion of erroneous reasons. Because any errors in the ALJ's credibility findings are harmless, s*ee Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), the Court recommends the ALJ's credibility finding be affirmed.

**C.    Medical Opinion Evidence**

An ALJ should generally give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester*, 81 F.3d at 830. The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester*, 81 F.3d at 830-31.

**1.    Shahrzad Sodagar-Marvasti, M.D.**

In October 2013, consultative examining doctor Shahrzad Sodagar-Marvasti opined,

---

[3] If Mr. Wagner's conditions have worsened since the ALJ issued her decision, or new impairments have developed, the appropriate remedy is to file a new application for disability benefits. *See Osenbrok v. Apfel*, 240 F.3d 1157, 1164 n. 1 (9th Cir. 2001).

RECOMMENDATION - 7

among other things, that Mr. Wagner could frequently reach and handle, but only occasionally feel and finger. Tr. 547. The ALJ found he could frequently reach, handle, feel, and finger. Tr. 38. Mr. Wagner contends the ALJ erred in rejecting the doctor's opinion that he was limited to only occasional feeling and fingering. Dkt. 19 at 10-11.

The ALJ rejected the more conservative manipulative limitations because Mr. Wagner had "little treatment" despite nerve conduction studies and recommended surgery; additionally, the ALJ cited a lack of Tinel or Phalen testing, an April 2015 indication of intact sensation, and Mr. Wagner's "probable" continued work in 2013. Tr. 40-41. The Commissioner appears to concede error on much of the ALJ's reasoning, but, citing *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992), argues Mr. Wagner's level of work in 2013 was alone substantial evidence to justify the ALJ's decision. Dkt. 20 at 5-6. In *Drouin*, the Ninth Circuit found substantial evidence supported a non-disability determination where the claimant had been able to hold "two previous jobs with a fair amount of success, [ ] even if those particular jobs are, as she claims, too taxing for her," *in light of* the fact that the VE testified the claimant was "qualified for thousands of less strenuous jobs." *Drouin*, 966 F.2d at 1258. But *Drouin* is of questionable relevance here, because, setting aside any questions regarding whether Mr. Wagner's level of work rose to the level of SGA in 2013, there was no finding Mr. Wagner qualified for less strenuous jobs. *See* Tr. 97-101.

Mr. Wagner calls the ALJ's analysis "speculative," and, in his reply, contends "there is *no* evidence that Plaintiff continued sustained use of his hand and fingers for illustrative work during 2013 or thereafter, and the ALJ cites none." Dkt. 21 at 5 (emphasis added). To the extent Mr. Wagner contends the ALJ erred because she failed to demonstrate his work rose to the level of SGA, the argument is unavailing. Mr. Wagner fails to cite to, and the Court is not aware of,

any authority prohibiting the rejection of opined limitations unless the evidence shows the claimant performed activities inconsistent with those limitations at a SGA level during the period under review. Moreover, the ALJ specifically cited to evidence from October 2013, wherein Mr. Wagner told providers (including Dr. Sodagar-Marvasti) that his "last job was two weeks ago and he is a digital artist," and he did "freelance artwork occasionally." Tr. 39 (citing Tr. 547, 551). The ALJ also noted that, although one of Mr. Wagner's clients submitted a statement in 2015 indicating his wife performed "the bulk" of their projects, "that would nevertheless suggest [Mr. Wagner] was performing some of them." Tr. 40, 41 (citing Tr. 337). The Court therefore concludes substantial evidence supports the ALJ's determination.

Finally, Mr. Wagner contends it was "egregious" error for the ALJ to "fail to specifically compare and consider the consistency of Prentice's opinion with that of Dr. Sodagar-Marvasti." Dkt. 19 at 13 (citing *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)). In *Garrison*, the ALJ rejected a check-the-box questionnaire completed by the claimant's treating neurologist because the provider failed to provide any "rationale" for his medical conclusions. *Garrison,* 759 F.3d at 1013. The Court concluded the ALJ committed "a variety of egregious and important errors" in evaluating the neurologist's opinion:

> (1) she entirely ignored most of his treatment records, including reports from Dr. Feldman, dozens of medical test results, and Wang's own treatment notes; (2) she failed to recognize that the opinions expressed in check-box form in the February 2008 PFC Questionnaire were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit; (3) she did not explicitly compare Wang's records to other medical evidence—and therefore failed to recognize that no other treating or examining physician disagreed with Wang, and that Griffith, the consultant whose views differed from Wang's, wrote his check-box report early in November 2007, very early in Garrison's course of treatment, and admitted in his report that he lacked access to Garrison's treatment records and

> statements; (4) she did not evaluate Wang's records for internal consistency or inconsistency in his description of Garrison's symptoms, an evaluation that would have disclosed consistent reports of burning, tingling, and numbness radiating from her back and neck into her extremities, causing weakness and intense pain; (5) she did not recognize that because Wang is a specialist, his opinion is owed greater weight as a matter of regulation; (6) more generally, she failed to afford the deference to which Wang was presumptively entitled under both Social Security regulations and our precedent as Garrison's treating physician; and (7) she manufactured a conflict with respect to the outcome of treatment by asserting that Wang's records showed "consistent[ ]" improvement, when in fact they show consistent cervical and lumbar radiculopathy that responded only very briefly and partially to treatment.

*Garrison*, 759 F.3d at 1013. The case is not applicable here. Here, the ALJ did not disregard supporting treatment and other records in concluding Dr. Sodagar-Marvasti failed to provide any rationale for his opinion. Rather, the ALJ provided at least one specific and legitimate reason for rejecting it.

In conclusion, neither of the parties present particularly compelling reasons to support their positions with respect to Dr. Sodagar-Marvasti's opined manipulative limitations. In such a case, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999); *see also Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The Court therefore recommends affirming the ALJ's decision with respect to Dr. Sodagar-Marvasti.

**2. John Fahlberg, M.D.**

On April 2, 2014, non-examining doctor John Fahlberg opined Mr. Wagner would be limited to light work and that he could frequently handle, finger, and feel bilaterally. Tr. 118-20.

The ALJ assigned the opinion "great weight," as it was consistent with the portions of Dr. Sodagar-Marvasti's opinion adopted by the ALJ, as well as Mr. Wagner's reported activities. Tr. 41. Mr. Wagner contends the ALJ erred in relying on the opinion "to reject the consistent opinions of an examining physician (Dr. Sodagar-Marvasti) and a treating 'other source' provider (P.A. Prentice)." Dkt. 19 at 13 (citing *Lester*, 81 F.3d 821 at 831-32). Mr. Wagner notes Dr. Fahlberg's opinion predates Mr. Prentice's opinion, and therefore fails to take it into consideration. Dkt. 19 at 14-15. He further notes the opinion failed to consider the EMG and nerve conduction testing in the medical record. *Id.*

As a preliminary matter, the ALJ did not simply cite Dr. Fahlberg's opinion in disregarding Dr. Sodagar-Marvasti's and Mr. Prentice's opinions; rather, she provided valid, independent reasons for rejecting those other opinions. *See* Section C.1, *supra*; D.1, *infra*. But Mr. Wagner's argument may be more nuanced. As the Court understands it, since Dr. Fahlberg relied upon the same records (and a subset at that) available to the other providers but came to different conclusions, the ALJ essentially adopted Dr. Fahlberg's opinion over the others by cherry-picking the conclusions she liked best. Dkt. 19 at 14-15; Dkt. 21 at 7. Yet this, too, is not completely accurate, because the ALJ also found the opinion consistent with Mr. Wagner's reported activities, including doing freelance work, gardening, household tasks, self-care, and preparing meals. Tr. 41. Thus, while the Court may understand why Mr. Wagner believes the ALJ should have accorded Dr. Fahlber's opinion less weight, the Court also agrees with the Commissioner that it may not in this case substitute its judgment for that of the ALJ.

**D.     Other Source and Lay Witness Testimony**

Physicians Assistants and lay witnesses are considered "other medical sources," whose opinions may be rejected only upon providing reasons germane to that witness. *Molina*, 674

F.3d at 1111. An ALJ may evaluate opinions of other sources using the same factors applied to evaluate medical opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a) and (d), SSR 06-03p; *Molina*, 674 F.3d at 1111.

### 1. John Prentice, PA-C

In September, 2015, treating provider John Prentice opined Mr. Wagner could not sustain upper extremity activity or prolonged sitting, walking or standing throughout the day, and therefore could not work as an illustrator or engage in meaningful employment. Tr. 473. Mr. Prentice further opined Mr. Wagner's Reiter's syndrome, Raynaud's disease, idiopathic neuropathy, carpal tunnel, sciatica, and bilateral hip osteoarthritis would last, cumulatively, for "at least" twelve continuous months. *Id.* He rendered his assessment after considering patient history, findings from multiple visits, rheumatology consultations, and a review of medical records, which included assessments based on nerve conduction studies and EMG testing. *Id.*

The ALJ based her rejection of the provider's opinion on examination findings in the record showing full strength in the hands and lower extremities, an absence of evidence of atrophy or testing to support the assertion of diminished functionality, an absence of evidence of treatment for hand numbness, Mr. Wagner's daily activities, an April 2015 examination showing intact sensation, and evidence suggesting Mr. Wagner did at least some work in 2013. Tr. 40.

Mr. Wagner asserts the ALJ's finding he had "little treatment" for hand numbness is unsupported by the record. Dkt. 19 at 8 (citing Tr. 246, 267, 365-66, 412, 413, 414-15, 428, 486, 487-88, 490-91, 500, 507, 514, 516-17, 523, 525, 537, 538, 543-44, 546, 550, 569). The ALJ found that

> [a]lthough nerve conduction studies were performed and surgery recommended, the claimant appears to have had little treatment for his hand numbness. There was no Tinel or Phalen testing

> performed, and the one hand examination in April 2015 indicated the claimant's sensation was intact.

Tr. 40. The Commissioner does not defend this portion of the decision. *See* Dkt. 20. The Court agrees the position is unsupported by substantial evidence. Recommendations for surgery can hardly be considered minimal or conservative treatment. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Moreover, the ALJ's reasoning is contradicted by her own decision, wherein she noted a 2014 evaluation indicated negative Tinel's signs. Tr. 39. There Court therefore finds this reasoning was not valid.

Mr. Wagner also contests the ALJ's finding that Mr. Prentice's opinion regarding sitting, standing, and walking was belied by evidence of full strength in his lower extremities and an absence of evidence of atrophy "[g]iven his testimony that he is only able to stand for five minutes." Dkt. 19 at 9-10; Tr. 40. Mr. Wagner asserts the ALJ's reasoning is factually erroneous, because the record contains evidence of hypertrophy. Dkt. 19 at 10. He then points to evidence of hypertrophied back muscles and sciatica, and an observation by his examining psychologist that he limped when he walked. Dkt. 19 at 10 (citing Tr. 366, 413, 501, 551). As a preliminary matter, the ALJ's decision suggests she expected documented evidence of lower extremity atrophy, which Mr. Wagner does not provide. Furthermore, the records he points to also indicate he had "[m]uscles with normal tone and bulk. Muscle strength 5/5 proximal and distal upper and lower extremities symmetrically," Tr. 413, and he could "[o]n a daily basis . . . dress and bathe, run errands, shop, do household chores, drive, and cook. He enjoys gardening. . . He can drive a car and move about alone," Tr. 551. The Court therefore recommends this reasoning not be disturbed.

Mr. Wagner next challenges the ALJ's rejection of Mr. Prentice's opinion that he could

RECOMMENDATION - 13

not sustain upper extremity activity throughout the day on the basis that it was inconsistent with other findings showing he had full strength in his hands and his sensation was intact. Dkt. 19 at 8. Specifically, Mr. Wagner argues evidence of hand strength is not inconsistent with the provider's opinion. *Id.* While this may be true in the abstract, here, it misses the mark. The ALJ did not merely reject the provider's opinion because it was contradicted by evidence in the record; rather, she concluded the provider's opinion regarding loss of function with *prolonged* motor activity was unsubstantiated. Tr. 40. The ALJ's conclusion was gleaned from evidence showing Mr. Wagner had full strength in his hands and lower extremities, but also from an absence of evidence ("testing") showing that Mr. Wagner's actual functional capacity with prolonged use was as diminished as the provider opined. This is a valid basis for rejecting even a treating physician's opinion. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician's opinion need not be given controlling weight when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *see also Tackett*, 180 F.3d at 1098 ("The burden of proof is on the claimant as to steps one to four."). And while it may not be unreasonable to conclude the nerve conduction studies and EMG testing could support Mr. Prentice's speculation about Mr. Wagner's functional capacities over time, it was also not unreasonable for the ALJ to conclude the evidence was insufficient to support the opinion. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599 (*citing Andrews*, 53 F.3d at 1041). Mr. Wagner may offer a reasonable interpretation of the record, but the ALJ's conclusion was also reasonable. The Court therefore recommends the decision be affirmed.

Mr. Wagner further disputes the ALJ's assignment of "no weight" to Mr. Prentice's

opinion that it was unlikely any treatment or surgery would render him capable of engaging in meaningful employment or work as an illustrator for a period beyond twelve months. Dkt. 19 at 9; Tr. 40, 474. Mr. Wagner's argument mischaracterizes the ALJ's decision. This portion of the ALJ's decision simply accorded no weight to Mr. Prentice's opinion that Mr. Wagner was incapable of engaging in meaningful employment or working as an illustrator, a necessary precursor to the conclusion that Mr. Wagner's disabling conditions would preclude him from working in the next twelve months or that surgery would be ineffectual. *See* Tr. 39-40.

Mr. Wagner also contends the ALJ relied improperly on his daily activities and her speculations about his work in 2013 to reject Mr. Prentice's opinions. The Court has already found the ALJ did not err in concluding he was "not as limited as one would expect given his complaints" based upon these activities. *See* Section B.3, *supra*. Accordingly, the Court finds that this reasoning, combined with the other valid reasons the ALJ provided, amounts to "germane" reasons to reject the treating provider's opinion. The Court therefore recommends the ALJ's decision with respect to Mr. Prentice's opinion be affirmed.

**2.    Marijke Wagner**

Ms. Wagner provided a statement dated November 13, 2015, indicating Mr. Wagner could no longer sit or stand for more than 10 minutes; he could not walk a block and had to use a cane; he could no longer work due to neuropathy and carpal tunnel syndrome; and he has lost feeling in his fingers and can no longer hold a pen. Tr. 300. The ALJ assigned the statements "some weight" because they were "not entirely consistent with the objective medical evidence." Tr. 41.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ gives specific reasons germane to the witness for rejecting the

RECOMMENDATION - 15

testimony. *Molina*, 674 F.3d at 1111; *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). The Court agrees with Mr. Wagner that the ALJ's reason for assigning only "some weight" to the testimony was not specific. Nevertheless, an ALJ's rejection of lay witness testimony is at most harmless error where an ALJ's well-supported reasons for rejecting a claimant's testimony apply equally well to the lay witness testimony. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (Where ALJ gave germane reasons for rejecting claimant's testimony, those reasons are equally germane to similar testimony by a lay witness.). Here, Ms. Wagner's testimony was similar to Mr. Wagner's testimony. *See, e.g.,* Section B.1, *supra*. Accordingly, Mr. Wagner has not demonstrated harmful error with respect to the lay witness testimony.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **June 15, 2017**. If no objections are filed, the Clerk shall note the matter for June 16, 2017 as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 1st day of June, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge